UNITED STATES DISTRTICT COURT
SOUTHER DISTRICT OF OHIO
EASTERN DIVISION

**JOHN BENNETT,**

  **Plaintiff,**

  v.

           Civil Action 2:14-cv-1450
          Judge George C. Smith
          Magistrate Judge Elizabeth P. Deavers

**GARY MOHR,** *et al.*,

  **Defendants.**

## OPINION AND ORDER

  Plaintiff, John Bennett, an inmate who is proceeding without the assistance of counsel, brings this prisoner civil rights action under 42 U.S.C. § 1983 alleging that he was denied access to the library, which he alleges in turn interfered with his First Amendment right of access to the courts.  This matter is before the Court for consideration of Plaintiff's Motion to Compel Discovery (ECF No. 69), Defendant's Memorandum in Opposition (ECF No. 70), and Plaintiff's Reply (ECF No. 75).  For the reasons that follow, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**.

### I.

  On September 4, 2014, Plaintiff filed this action naming numerous employees of the Ohio Department of Rehabilitation Correction ("ODRC") and Madison Correctional Institution ("MaCI") as Defendants.  In the October 7, 2014 Initial Screen Report and Recommendation (ECF No. 4), which the Court adopted in its November 20, 2014 Order (ECF No. 21), Magistrate Judge Abel recommended allowing Plaintiff to proceed against Defendant Thomas King, the MaCI librarian, and Defendant Jason Bunting, the MaCI warden.  Magistrate Judge Abel

summarized Plaintiff's allegations against Defendants King and Bunting (collectively "Defendants") as follows:

> The complaint alleges that King repeatedly denied plaintiff Bennett access to the law library, delayed his access to the law library, retaliated against him for the exercise of the right of access to courts, created an unsafe/hostile environment, and ordered unreasonable searches of King for other inmates' legal work. Warden Jason Bunting is alleged to have been aware of King's unlawful conduct and to have condoned it.

(Oct. 7, 2014 Report & Rec. 2–3, ECF No. 4.)  Magistrate Judge Abel also noted that Plaintiff had alleged that Defendants' conduct had caused him to miss the statute of limitations for filing a federal habeas corpus petition.  (*Id*. at 5.)

On November 9, 2015, the Court issued an Order denying without prejudice Plaintiff's earlier-filed motions to compel on the grounds that he failed to satisfy the certification requirement set forth in Rule 37(a) and also because it appeared that subsequent correspondence between the parties rendered the motions moot in part.  (ECF No. 65.)  The Court then set forth deadlines for exchanging correspondence regarding any outstanding disputes in an effort to assist the parties in the identification and resolution of any remaining disputes.

Plaintiff filed the subject Motion to Compel Discovery on February 8, 2016.  (ECF No. 69.)  Plaintiff represents that despite good faith attempts to confer with Defendants, disputes remain concerning a number of the interrogatories and document requests he propounded. Plaintiff attached to his Motion to Compel a renumbered set of written discovery requests that were outstanding as of December 2015.  (ECF No. 69-2.)  For each newly-numbered request, Plaintiff refers to the original number of the request in the earlier-served discovery.  For clarity and ease of reference, the Court will refer only to the original numbers of the disputed requests as reflected in ECF Nos. 46-1, 46-2, 53-2, 69-2, 69-3, and 70-3.

In their Memorandum in Opposition, Defendants maintain that they have either properly responded or objected to any of the alleged outstanding deficiencies.  (ECF No. 70.)  In his Reply, Plaintiff offers arguments in support of his position concerning each of the disputed discovery requests.

The Court will review the parties' arguments with regards to each of the disputed requests below.

## II.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests.  Fed. R. Civ. P. 37(a)(1).  The Court is satisfied that this prerequisite to filing a discovery motion has been satisfied.

Determining the scope of discovery is within the Court's discretion.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad."  *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  Federal Rule of Civil Procedure 26(b)(1), which sets forth the permissible scope of discovery, provides as follows:

> **(1) Scope in General**. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (Kemp, J.) (quoting *Clumm v. Manes*, No. 2:08–cv–567 (S.D. Ohio May 27, 2010) (King, J.)); *see also Berryman v. Supervalu Holdings, Inc.*, No. 3:05-cv-169, 2008 WL 4934007, at *9 (S.D. Ohio Nov. 18, 2008) ("At least when the relevance of a discovery request has been challenged the burden is on the requester to show the relevance of the requested information.") (internal citation omitted)).

### III.

Plaintiff challenges the sufficiency of Defendants' responses to fifteen of his written discovery requests. The Court considers each disputed request in turn, addressing them in the order Plaintiff presents them in his Motion to Compel.

**A.** **Interrogatory Number Twenty-Three**

Plaintiff's Interrogatory Number Twenty-Three, which also contains a request for the production of documents, propounded on Defendant King, states as follows:

> In paragraph 53, an allegation was made that the complaints that Plaintiff Bennett was making against you (Defendant King) were not being properly looked into by staff at MCI. Did you (Defendant King) have anything to do with the investigations, who was to conduct those investigations, did you (Defendant King) follow any recommendations related to these improperly investigated complaints. Produce any related document(s).

(Defs.' Answers to Pl's Ints. 8, ECF No. 46-1.)

According to Plaintiff, Defendants' response to the foregoing Interrogatory remains deficient because "no documents were produced to show who conducted the investigation, any investigation report, or any related document." (ECF No. 69-2 at p. 1.) In his Motion, he further asserts that Defendants are representing that he was the only inmate who filed grievances against

4

Defendant King.  Plaintiff acknowledges that he has received more than three-hundred pages of documents containing informal complaint resolutions ("ICR") from Defendants that consist of complaints other inmates made against Defendant King.  Plaintiff maintains that the additional documentation he seeks is relevant because it would demonstrate the identity of the individuals who conducted the investigations of these complaints as well as whether any recommendations were made that Defendant King failed to follow.

In their Memorandum in Opposition, Defendants clarify that they made no representations that Plaintiff was the only inmate to have filed grievances against Defendant King.  Defendants point out that they provided more than 300 pages of ICRs to Plaintiff that other inmates filed, but that the names of the inmates had been redacted in order to protect their identities.  Defendants maintain that further documentation regarding the complaints of other inmates is unduly burdensome and constitutes a fishing expedition.  Defendants further challenge the relevancy of any additional documentation.  Defendants assert that documents relating to the ICRs of other inmates lack relevance because Plaintiff cannot assert arguments on behalf of others.  Defendants further assert that the documents are not relevant because liability cannot be established on the basis of *respondeat superior*.

Plaintiff's request for production of additional documentation has merit insofar as he seeks additional documentation concerning reports or other documents that relate to the complaints he filed against Defendants regarding library access.  Such documentation could bear on Defendants' knowledge of the alleged complaints and serve as evidence that either corroborates or undermines a party's version of what actions had been taken or not taken.  Consistently, Magistrate Judge Abel, in recommending denial of Defendant Warden Bunting's

5

Motion to Dismiss, relied upon dispositions of grievances and reports sent to Defendant Bunting to conclude that Plaintiff had sufficiently stated a claim against him, reasoning as follows:

> While there were a number of grievances filed by plaintiff that were without merit, plaintiff has identified a number of occasions where the warden was alerted to what appears to be an ongoing problem with the library. I believe that plaintiff has adequately stated a claim against the warden on the basis of plaintiff's repeated complaints, which resulted in numerous reports and recommendations being submitted to the warden. The complaint alleges despite these repeated reports and recommendations, the warden failed to address the conduct of King supporting plaintiff's claim that the warden implicitly authorized or acquiesced in the unconstitutional conduct.

(Feb. 24, 2015 Report & Rec. 7–8, ECF No. 36 (*adopted* May 27, 2015 Order, ECF No. 51).) Magistrate Judge Abel also quoted from several dispositions of grievances that referenced reports that had been submitted to Defendant Bunting. (*Id*. at 6–7.) The Court agrees that the reports Magistrate Judge Abel referenced, as well as other similar types of documents, including other reports, investigation findings, or other similar documents that were generated as a result of or in response to Plaintiff's complaints are relevant and discoverable. Accordingly, **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**, Defendants must produce the foregoing documentation and may redact any identifying information that they believe may compromise institutional security or inmate safety. To the extent that any of this documentation contains particular recommendations, in accordance with Plaintiff's discovery request, Defendants must also identify whether they implemented each of the recommended courses of action.

The Court need not address whether documentation relating to complaints other inmates filed is discoverable because it is outside the scope of this discovery request. Finally, to the extent that the identities of the individuals who performed the investigations of Plaintiff's grievances against Defendants is not readily discernable from the face of the documents

Defendants have produced or will be producing pursuant to this Opinion and Order, Defendants need not identify the author by name, but must at least identify the position they held.

**B.     Document Request Number 12**

Plaintiff's Document Request Number Twelve, which is more properly characterized as an interrogatory, states as follows: "Is there a security post within the library and if so, who is assigned to this post[?]" (ECF No. 46-2 at p. 7.) Defendants challenge the relevancy of this request. According to Plaintiff, this question is relevant because it shows that "no security post is in the library and that at one time, there was." (Pl.'s Mot. to Compel 3, ECF No. 69.) Plaintiff posits that if there had been a security post as is required under the prison's policy, the library could have remained open when Defendant King failed to show up for work. The relevant inquiry, then, is whether the library remained open when Defendant King failed to come to work. The Court therefore **MODIFIES** Request Number Twelve to request that Defendants identify the days that Defendant King failed to work in the library and identify whether or not the library remained open for those days. If the library was opened but for reduced hours, Defendants should note so. Defendants must provide their supplemental response to this interrogatory **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**.

**C.     Document Request Number 14**

Plaintiff's Document Request Number Fourteen, which is more properly characterized as an interrogatory, states as follows: "What is the policy as it relates to the procedures when the library is full and what is done to advise when not full after being turned away as full." (ECF No. 42-2 at p. 8.) In his Motion to Compel, Plaintiff represents that inmates who were turned away from the library "are going to chow." (Pl.'s Mot. to Compel 3, ECF No. 69.) He appears to assert that Defendants point to inmate abuse of their library passes as a basis for denying

7

library passes or changing the schedule of the library.  He maintains that this request is targeted at assessing the veracity of Defendants' assertion of inmate abuse.  Defendants respond that proof of inmate abuse of library passes would be found in conduct reports and assert that those records were not requested and that exposing such records would violate the privacy of the institutional records of other inmates.

The Court agrees with Defendants that production of inmates' conduct reports relating to abuse of library passes is outside the scope of Plaintiff's discovery request.  The information Plaintiff seeks, however, is both relevant and discoverable.  Defendants must therefore provide their response to this interrogatory **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**.  In lieu of describing any policy or procedure MaCI employs when the library is full or what its policy is with regard to informing inmates who were turned away of a vacancy, Defendants may produce copies of any relevant written procedures it employs.

**D.     Document Request Number 22**

Plaintiff's Document Request Number Twenty-Two, which is more properly characterized as an interrogatory, states as follows:  "What are the current qualifications of the inmate law clerks and when [were] their last qualifications tests[s] administered[?]"  (ECF No. 46-2 at p. 10.)  Plaintiff asserts that he seeks this information in order to "show that the inmate law clerks are not qualified."  (Pl.'s Mot. to Compel. 4, ECF No. 69.)  Plaintiff adds that "[h]ad the inmates been qualified, . . . then problems that [he] had with [them] would not have occurred."  (*Id*.)  In their Memorandum in Opposition, Defendants challenge the relevancy of this request pointing out that Plaintiff has not demonstrated or even suggested that the incompetency of an inmate legal clerk was the reason that he missed his habeas filing deadline.  Defendants also point out that just as Plaintiff has no right to counsel in a habeas proceeding, he

8

also has no right to an inmate legal clerk. In his Reply, Plaintiff generally asserts that the absence of a qualified legal inmate "is part of why" his habeas action was dismissed as untimely. (Pl.'s Reply 4, ECF No. 75.)

The Court agrees with Defendants that Plaintiff has failed to satisfy his burden to demonstrate the relevance of this request. Notwithstanding Plaintiff's failure to sufficiently allege that the absence of a qualified inmate legal clerk impacted his habeas filing, the Court is unaware of any authority that provides a constitutional right to a qualified inmate legal clerk. Indeed, courts have rejected an inmate's reliance upon the bad advice from inmate legal library clerks as a ground to find equitable tolling of habeas petitioners' claims. *See, e.g.*, *Urena v. Brown*, No. 06–cv–3163, 2007 WL 3284646, at *2 (S.D.N.Y. Nov. 5, 2007) (declining to apply equitable tolling to habeas petitioner's claim where he received "erroneous advice from an inmate legal library clerk" and citing cases reaching the same result). Relatedly, as Defendants correctly point out, there is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess*, 306 F. 3d 441, 444 (6th Cir. 2002) (citation omitted). In addition, "an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations" in habeas proceedings. *Id.* (citation omitted). Accordingly, Plaintiff's request for an order compelling Defendants to respond to his Document Request Number Twenty-Two is **DENIED**.

E.     **Document Request Number 24**

Plaintiff's Document Request Number Twenty-Four states as follows: "Produce the log book or otherwise that shows the last time Defendant King made rounds to rotate the books for leisure within the prison [b]locks bookshelves." (ECF No. 46-2 at p. 11.) Defendants challenge this request on the grounds of relevancy, asserting that whether the leisure books were rotated

has no bearing on Plaintiff's claims in this action. The Court agrees that Plaintiff has failed to demonstrate the relevancy of this request. Accordingly, Plaintiff's request for an order compelling Defendants to respond to his Document Request Number Twenty-Four is **DENIED**.

### F. Document Request Number 25

Plaintiff's Document Request Number Twenty-Five, which is more properly characterized as an interrogatory, states as follows: "When [was] a directive to Defendant King to install a scanner in the library that would relieve the hallway traffic of inmates and when was this scanner installed[?]" (ECF No. 46-2 at p. 11.) Defendants responded that the scanner was installed in May 2015, but that it is currently deactivated. In his Motion to Compel, Plaintiff posits that installation of a scanner in the library would have prevented lines in the main hallway. Defendants challenge Plaintiff's request on the grounds of relevancy, asserting that Plaintiff has no constitutional right to a scanner. In his Reply, Plaintiff states that "[c]urrently, there is no scanner installed in the library and somehow no lines are being formed in the main hallway . . . ." (Pl.'s Reply 5, ECF No. 75.) The Court is unclear as to what Plaintiff maintains remains to be answered concerning this request. Regardless, the Court is unable to discern the relevancy of any further information relating to the installation of the scanner. Accordingly, Plaintiff's request for an order compelling Defendants to respond to his Document Request Number Twenty-Five is **DENIED**.

### G. Document Request Number 28

Plaintiff's Document Request Number Twenty-Eight, which is both an interrogatory and a document request, states as follows: "How many days has the Institutional Library been closed or opened late since 2011, [and] produce any related documents." (ECF No. 46-2 at p. 12.) Defendants responded that they had no documents that specifically kept the information he

10

sought in this request and have no duty create records. Defendants informed Plaintiff that "[n]evertheless, Defendant King endeavored to provide a list of days when he recalled being out or the library closed" and provided Plaintiff Defendant's King's documentation. (Defs.' Mem. in Opp. 15, ECF No. 70.) In his Motion to Compel, Plaintiff asserts that the document Defendant King prepared was inaccurate based upon other documentation he has obtained that demonstrates library closures in excess of what Defendant King represents. Plaintiff further submits that a master log must be kept pursuant to prison policy and that this log would show library closures.

Defendants are correct that they are not required to create records in order to respond to Plaintiff's discovery requests. *See*, *e.g.*, *In re Porsche Cars, N.A., Inc.*, No. 2:11–md–2233, 2012 WL 4361430, at *9 (S.D. Ohio Sept. 25, 2012) ("If Defendants indicate that, after a reasonable inquiry, no documents exist that are responsive to the request, then their obligations under the Federal Rules are satisfied and the Court can compel nothing more.") (citing *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:06–CV–443, 2007 WL 3376831, at *2 (S.D. Ohio Nov. 8, 2007) and Fed. R. Civ. P. 34(a)). If, however, Plaintiff is correct that such a master log exists that would reflect when the library was open and closed, than Defendants must produce that log **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**. In addition, if (1) the MaCI library was, in fact, closed on days or times when Defendant King was not at work; and (2) Defendants have access to records that would reflect when he was off work, then Defendants must provide a list of those days (or partial days) on which Defendant King was not at work **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**. If no such documents exist, Defendant King must identify the methodology he employed to reconstruct the days he believes the library was closed, including identification of any documents upon which he relied **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**.

**H.       Interrogatory Number 15**

Plaintiff's Interrogatory Number Fifteen states as follows: "What is the policy for illiterate/uneducated or non-English Speaking inmates who have a need for legal help." (ECF No. 53-2 at p. 6.)  In response to this interrogatory, Defendants identified and copied in a section of the prison's operative policy.  Neither Plaintiff's Motion to Compel nor his Reply identify how Defendants' response was deficient.  Plaintiff's request for an order compelling Defendants to respond to his Interrogatory Number Fifteen is therefore **DENIED**.

**I.       Interrogatory Number 24**

Plaintiff's Interrogatory Number Twenty-Four states as follows:  "When inmate conduct reports have been overturned, what is the procedure to return to the inmate any sanctions that have been assessed against him[?]"  (ECF No. 53-2 at p. 8.)  In response to this interrogatory, Defendants identified the operative policy.  In his Motion to Compel, Plaintiff complains that Defendants should have responded with an explanation of how his particular conduct-report reversal was assessed, including any related paperwork.  Defendants counter that this information is outside the scope of Plaintiff's request.  The Court agrees.  Accordingly, Plaintiff's request for an order compelling Defendants to respond to his Interrogatory Number Twenty-Four is **DENIED**.

**J.       Document Request Numbers 6, 15, 26, and 27**

In his Motion to Compel, Plaintiff states that the response of Defendant Bunting is illegible, but fails to identify any particular document that is illegible.  Plaintiff maintains that the documents at issue are relevant to show that Defendant Bunting was aware of Defendant King's unconstitutional behavior.  Defendants point out that the only challenge to the legibility of the documents they produced that Plaintiff raised in identifying any outstanding discovery disputes

12

pursuant to the Court's November 9, 2015 Order was his newly-numbered interrogatory request number 32 in which he indicates that he could not read bates number 912 of Defendants' production. (Defs.' Mem. in Opp. 21, ECF No. 70 (citing ECF No. 69-2 at p 2).) Defendants represent that they are in the process of requesting the author of bates number 912 to identify what he wrote and that they will provide the translation to Plaintiff. Based upon the Court's review of the outstanding issues Plaintiff identified in ECF No. 69-2 and Defendants' representations, the Court considers Plaintiff's illegibility challenge moot. Plaintiff raises additional challenges in his Reply, but in accordance with well-settled authority, the Court declines to entertain arguments raised for the first time in a reply brief. *See Bishop v. Oakstone Academy*, 477 F. Supp.2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief."); *United States v. Galaviz*, 645 F.3d 347, 362 (6th Cir. 2011) ("We do not usually entertain new arguments raised for the first time in a reply brief.") (citation omitted)); *United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004) ( "As a general rule, this Court does not entertain issues raised for the first time in [a] . . . reply brief."). Accordingly, Plaintiff's request for an order compelling Defendants to respond to his Document Request Numbers 6, 15, 26, and 27 is **DENIED AS MOOT**.

**K.     Document Request Number 18**

Plaintiff's Document Request Number Eighteen states as follows: "Produce the directive given as shown in grievance number MCI-02-14-18 (exhibit NN)." (ECF No. 70-3 at p. 7.) Defendants produced an email, bates numbered 822, that they represent constitutes the source of the directive referenced in the grievance at issue. Plaintiff maintains that this email does not supply the authority to allow for changes to ODRC policy. He therefore continues to seek additional documentation relating to the directive. Defendants confirm that the email constitutes

the directive and maintain that Plaintiff's challenges to the formality of the email do not render their response deficient.  Defendants also challenge the relevancy of Plaintiff's request.  The Court agrees that Plaintiff's challenge to the sufficiency of the email produced as the basis upon which to change an ODRC policy does not bear on the sufficiency of Defendants' response.  Because Defendants have produced the documents Plaintiff requests, his request for an order compelling Defendants to respond to his Document Request Number 18 is **DENIED AS MOOT**.

L.     **Document Request Number 19**

Plaintiff's Document Request Number Nineteen states as follows: "Produce the documents that pertain to grievance number MCI-03-14-67 (exhibit UU) as 'it was in the best interest of MCI that offenders will not get make up passes' and the 'email sent' to Defendant [K]ing." (ECF No. 70-3 at p. 7.)  Defendants supplied document bates number 961, an email sent to Defendant King, in response to this document request and further informed Plaintiff that "the decision was made, but not necessarily documented." (*Id.* at p. 8.)   Defendants represent in their Memorandum in Opposition that this was the only document that they are aware of that responds to Plaintiff's request.  Defendants need only conduct a good faith search and produce responsive documents.  Although the Court suspects they have already completed the task, if they have not, they must perform such a search and produce responsive documents **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**.  As set forth above, Defendants need not create documents that do not exist.

**IV.**

For the reasons set forth above, Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 69). Defendants are **ORDERED** to supplement their discovery responses consistent with the foregoing.

    **IS SO ORDERED.**


Date: May 20, 2016                                      /s/ Elizabeth A. Preston Deavers
                                                                            ELIZABETH A. PRESTON DEAVERS
                                                                            UNITED STATES MAGISTRATE JUDGE